UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JON CHRISTOPHER BALLAY                    CIVIL ACTION

VERSUS                                    NO. 14-515

MARLIN N. GUSMAN ET AL.                   SECTION "R" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Jon Christopher Ballay, was a prisoner incarcerated in the Orleans Parish Prison system ("OPP").  He is now being held in the Richwood Correctional Center in Richwood, Louisiana.  Record Doc. No. 23.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Chief Miller, Sgt. Hudson and Lieutenant Rhodes.  Ballay alleges that while incarcerated in OPP, he was subjected to unconstitutional conditions of confinement. He seeks compensatory damages exclusively in the total amount of $5,000,000.00.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On May 15, 2014, I conducted a telephone conference in this matter.  Participating were plaintiff pro se; Tim Richardson and Charlin Fisher, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Ballay testified that at the time of the telephone conference he was being held in the Jefferson Parish Correctional Center as a pretrial detainee on an "open charge" of pandering with no court date then set. He stated that his claims in this case relate exclusively to a period of about two months during which he was an inmate being held in the "tents" facility of OPP.

Specifically, Ballay testified that he was incarcerated in OPP from October 17, 2013, until March 17, 2014, when he was transferred to Jefferson Parish. He clarified, however, that he was moved out of the tents at OPP sometime in December 2013 and was exposed to the conditions he complains about in this case only during the first two months of his OPP incarceration. He said that he was being held in OPP at that time as a pretrial detainee.

Ballay stated that upon his arrival in OPP Tent 3, the "back bathroom area" was equipped with "a long stainless steel apparatus that was canted . . . It wasn't even bolted to the floor anymore, . . . and the whole sink assembly that must have been at least 12 to 16 feet long by . . . three feet wide by four feet high was no longer bolted to the floor." Ballay explained that the apparatus was a row of sinks that "provided water to a long trough where inmates brushed their teeth and spit," but some of "the pipes were missing so it drained directly onto the floor." He said that the pipes underneath the sinks to

2

which drain pipes were supposed to be attached "had sewage back flooding up from the pipe. It was all pooling into an area approximately three by three feet . . . [for] so long that the concrete floor was discolored from the sewage pooling in that area." Ballay testified that this area in Tent 3 "had feces, toilet paper, live leaches, larvae, various things crawling in it." Plaintiff said that the Tent 3 area "apparently housed HIV and AIDS patients. I spoke with several of them and their waste was obviously mixed in with this stuff."

Ballay testified that twice a day the inmates in Tent 3 were required to stand up to be counted during roll call, and "they put the entire 70-80 man population in the bathroom area to make them walk out one by one to count, so now we're standing in the stuff, it's being tracked all over the tent, living areas, eating areas. . . It's disgusting." Although he was only in that tent for about two months, Ballay said other inmates told him the situation had been ongoing for six months.

"Ultimately," he said, "after filing grievances, just dozens of them, the maintenance people came in, and . . . after maybe 30 days or so, . . . they fixed it" by installing the necessary replacement piping "to prevent the up flow of the sewage or the down flow of everything coming out of the sinks." Ballay said the repair occurred while he was still housed in Tent 3, "a day or so before" he was moved to another area.

Ballay testified that while the grievances about this condition were being filed and before the repair was made, OPP deputies entered Tent 3 on several occasions to ask who was filing the grievances. "They came in one night with loaded shotguns pointing them at people" and "threatened to have our food cut down to half rations" if the grievances continued, although he could not say for sure whether food rations had been cut.

Ballay testified that on the night deputies entered the area and threatened them with shotguns, although the shotguns were never fired, the inmates were made to stand in the mess, while Sgt. Hudson walked in it himself, told them he was a veteran of Iraq who had to work in that area and that the inmates should "just suck it up" until they could be moved to the new jail, which was under construction both then and now.  Plaintiff confirmed that he had received the medical records that I ordered defendants to produce to him and me, and that the records are accurate.  Record Doc. Nos. 6 and 21.  He testified that prison officials had told him that there are no tests that could be given to determine if he had contracted HIV or AIDS from his exposure to the "sewage." Ballay stated that he was tested for HIV and AIDS upon his booking into OPP, and that he had tested negative for those conditions, but that he had not been retested since that time.

Asked if he had experienced any health problems as a result of his exposure to these conditions at OPP, since his medical records do not indicate any such health conditions or complaints, Ballay said, "Other than extreme mental anxiety, up until this

4

point not knowing whether I'm going to come up HIV or AIDS positive, and just obvious exposure to sewage that's extreme discomfort, I can't say that I've gotten sick as of yet, . . . but as they say, it may not show up for one year, six months or two decades from now."  He alleged, however, that he can prove he was exposed and that OPP deputies knew and were deliberately indifferent to the conditions because they were relying on the completion of the new jail to address these conditions, which he stated is no excuse to "allow things to happen and not fix them."

Ballay said he filed a grievance on the OPP electronic grievance system and that he pursued every step of the OPP administrative remedy procedure ("ARP") through the final step of appeal to the sheriff himself, but he accused OPP deputies of lying in their response to the grievances. "Poor Mr. Gusman relying on deputies that are under his supervision . . . [with] employees that would lie so shamelessly. . . . I even believe they lied to the sheriff," which caused him not to know about the condition until much later than it had commenced.  He alleged that hundreds of inmates like himself had been exposed to the conditions over a lengthy period of time.

At the conclusion of his testimony, Ballay stated that he had just seen a lawyer who was considering accepting his representation in this case, and he requested time for the lawyer to make his evaluation and determination.  His request was granted, Record Doc. Nos. 19 and 20, and the screening process mandated by 28 U.S.C. § 1915A was

deferred for two weeks to allow prospective counsel to review the matter and enroll to represent plaintiff if he desired to do so.  About three months have since lapsed, and no lawyer has enrolled to represent plaintiff.

**ANALYSIS**

I.      STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

6

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute

7

a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his two-month period of incarceration in the Tent 3 unit of OPP. Ballay was a pretrial detainee at all times that form the basis of his claims in this case. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001);

---

[1] The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of

Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an

inference that the condition he described was the result of a prison official's act either

"implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an

identifiable intended condition or practice" or that the "official's acts or omissions were

sufficiently extended or pervasive, or otherwise typical of extended or pervasive

misconduct by other officials, to prove an intended condition or practice."  Id. at 645.

Thus, the complained-of harm is a particular act or omission of one or more officials, and

the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104

(1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310,

2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Ballay's allegations do not constitute violations of the

Constitution.  Two requirements must be met before Section 1983 liability will arise for

constitutional violations relating to conditions of confinement of the type plaintiff described. First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Ballay's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Ballay conceded in his testimony that he has suffered no physical injury or illness, other than mental anxiety and concern about possibly some day being diagnosed as HIV positive, as a result of the unsanitary conditions about which he complains.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Ballay's allegations about dirty conditions or faulty plumbing at the jail fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215; Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, <u>virtually</u> <u>permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'"  <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Ballay lasting for two

14

months do <u>not</u> rise to the level of a constitutional violation. The conditions he experienced in OPP Tent 3 were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

Ballay's medical records and testimony do not support a conclusion that any of the unsanitary conditions about which he complains resulted in any serious illness or medical condition related in any way to any unsanitary condition. In addition, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994). Ballay's testimony confirmed that he suffered no actual physical harm.

Ballay's stress, worry and fear of contracting HIV as a result of his very brief and distant exposure to an allegedly HIV-positive inmate do not state <u>serious</u> medical needs for purposes of constitutional analysis. Here, as in <u>Kenyon v. Cheshire Cty. Jail Admin.</u>, No. 92-515-M, 1994 WL 529925 (D.N.H. Sept. 22, 1994), "<u>if</u> [plaintiff] had in fact been exposed to [someone who] carried the AIDS virus, and <u>if</u>" that person's blood had contacted him in a way capable of transmitting the virus, "<u>then</u> plaintiff might have been exposed to a serious, indeed fatal, disease." <u>Id.</u> at *5. Ballay's allegations, however,

15

amount only to an assertion that he "might have been exposed to AIDS," which is insufficient to state a claim for relief because "'[a]n unsubstantiated fear of contracting a serious disease is not a basis for a constitutional claim' upon which damages can be awarded." Id. (quoting Quarles v. De La Cuesta, No. 92-5928, 1993 WL 86460, at *1 (E.D. Pa. Mar. 23, 1993)) (citing Glick v. Henderson, 855 F.2d 536, 539 (8th Cir. 1988); Goss v. Sullivan, 839 F. Supp. 1532 (D. Wyo. 1993); Deutsch v. Federal Bureau of Prisons, 737 F. Supp. 261, 267 (S.D.N.Y. 1990), aff'd, 930 F.2d 909 (2d Cir. 1991)); see also Marcussen v. Brandstat, 836 F. Supp. 624, 628 (N.D. Iowa 1993) (no serious medical need when plaintiff alleged mental stress from the fear of contracting HIV, caused by sharing a cell with an allegedly HIV-positive inmate who used plaintiff's toiletries, including his razor, which could cause blood-to-blood transmission of the virus); Johnson v. United States, 816 F. Supp. 1519, 1521, 1524 (N.D. Ala. 1993) (no serious medical needs when plaintiff alleged that he shared a cell with an inmate who died of AIDS; that his cellmate tampered with his toothbrush, toothpaste, and razor blade; that he observed his cellmate's blood on their sink, toilet and towels on several occasions; and that, during the last few days before his cellmate's death, he was forced to feed and "sanitize" cellmate).

Plaintiff's vague testimony about exposure to an HIV-positive inmate fails to allege any actual physical injury from that distant exposure. Although he stated that such

16

an inmate was in Tent 3, he did not know whether he had actually been exposed to the virus.  He did <u>not</u> say that he came into contact with the inmate's blood in a way that could transmit the virus. <u>See</u> <u>Stedmans Medical Dictionary</u>, available on Westlaw at STEDMANS 10860 (27th ed. 2000) ("HIV is transmitted from person to person in cell-rich body fluids (notably blood and semen) through sexual contact, sharing of contaminated needles (as by IV drug abusers), or other contact with contaminated blood (as in accidental needle sticks among health care workers).").  He also testified that he has not suffered any health problems as a result of his exposure, if any, other than stress and worry.

To state a claim under 42 U.S.C. § 1983, plaintiff must allege an <u>actual</u> <u>injury</u> caused by the defendants' acts, which Ballay has failed to do.  <u>See</u> <u>Brock v. Sparkman</u>, 101 Fed. Appx. 430, 2004 WL 1368923, at *1 (5th Cir. 2004) (citing <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); <u>Oliver v. Collins</u>, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); <u>Auster Oil & Gas, Inc. v. Stream</u>, 835 F.2d 597, 602 (5th

17

Cir. 1988) (citing <u>Memphis Cmty. Sch. Dist.</u>, 477 U.S. at 307) ("[Section] 1983 is designed to compensate persons for actual injuries caused by the deprivation of constitutional rights."); <u>Jefferson v. City of Hazelhurst</u>, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a cause of action under Section 1983, plaintiff must plead "a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.").

Ballay alleges no serious harm or risk of serious harm in the constitutional sense. In fact, he concedes that he has experienced no illness or any other kind of physical problem as a result of the conditions.  Thus, Ballay has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

III.   <u>NO PHYSICAL INJURY</u>

Ballay's claim for relief seeks compensatory damages exclusively.  Record Doc. No. 1 (Complaint at ¶ V).  Thus, his complaint fails to state a claim upon which relief may be granted under Section 1983 because Ballay testified that he suffered no physical injury.  Specifically, the Prison Litigation Reform Act of 1996 includes the following

requirement in 42 U.S.C. § 1997e(e):  "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury."  (Emphasis added).

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible harm, such as has been alleged by Ballay in this case.  <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 196 (5th Cir. 2007); <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75 (5th Cir. 2005); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).  The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  <u>Alexander v. Tippah County</u>, 351 F.3d 626, 631 (5th Cir. 2003) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar</u>, 112 F.3d at 193); <u>accord</u> <u>Mayes v. Travis State Jail</u>, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008).  Thus, in <u>Alexander</u>, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting.  <u>Id.</u>  Similarly, in <u>Siglar</u>, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.  <u>Siglar</u>, 112 F.3d at 193.

In this case, Ballay concedes that he suffered <u>no</u> physical injuries or illnesses of any kind. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is

precluded as a matter of law from recovering damages for the mental anguish, anxiety or other intangible injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, Hutchins, 512 F.3d at 197-98, Ballay has shown no constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." Allen v. Stalder, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

IV.   NO LIABILITY OF THE SHERIFF

Ballay has named Sheriff Gusman as a defendant in this case.  Although Ballay states in his complaint that the sheriff "refused to authorize funds to fix the [plumbing] problem due to the tent being ordered to close soon," Record Doc. No. 1 (Complaint at ¶ IV p. 5), his testimony confirmed that he blames the sheriff's subordinates for the plumbing problem and that Sheriff Gusman was not personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470

20

F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.

 Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

   "To hold a supervisory official liable for the acts of a subordinate, Ballay must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Ballay must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v.

Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Ballay's complaint against Sheriff Gusman is wholly conclusory and includes Ballay's own testimony that he believes the sheriff was misled by his subordinates. It is based on conditions that do not rise to the level of any constitutional violation. Under these circumstances, plaintiff states no cognizable Section 1983 cause of action against the sheriff, and all claims against him must be dismissed as legally frivolous.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

23

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___18th___ day of August, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.